UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-79-CHL

CHARLES J. PIERCE,                                               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                  Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the complaint (DN 1) of plaintiff Charles J. Pierce ("Pierce") filed on February 12, 2016. In his complaint, Pierce seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). *See* 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). Pierce filed a Motion for Summary Judgment (DN 13) and supporting memorandum (DN 14), as well as a Fact and Law Summary (DN 15). The Commissioner also filed a Fact and Law Summary.

The parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (*See* DN 8.) Therefore, this matter is ripe for review. For the reasons set forth below, the final decision of the Commissioner is affirmed.

I.       BACKGROUND

Pierce filed an application for disability and disability insurance benefits on July 3, 2012, alleging that he became disabled on July 27, 2011. (Tr. 180, 197, 203.) Pierce subsequently

1

filed an application for supplemental social security benefits on May 6, 2014, alleging the same disability onset date. (*Id*. at 197.)

On August 20, 2014, Administrative Law Judge Michael Nichols ("the ALJ") conducted a hearing on both applications. (*Id*. at 87.) Pierce was present and represented by counsel Chadwick Simpson. (*Id*. at 64.) William Harpool, a vocational expert, also testified at the hearing. (*Id*.) In a decision dated October 3, 2014, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. In doing so, the ALJ made the following findings.

1. Pierce met the insured requirements of the Social Security Act through December 31, 2016. (*Id*. at 54.)

2. Pierce has not engaged in substantial gainful activity since July 27, 2011, the alleged onset date. (*Id*.)

3. Pierce has the following medically determinable impairments: chronic back pain, diabetes, hypertension, obesity, low intelligence, depression, and anxiety. (*Id*.)

4. Pierce does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for twelve consecutive months; therefore, Pierce does not have a severe impairment or combination of impairments. (*Id*.)

5. Pierce has not been under a disability, as defined in the Social Security Act, from July 27, 2011, through the date of the decision. (*Id*. at 58-59.)

Pierce timely requested an appeal to the Appeals Council on or about November 25, 2014. (*Id*. at 42.) On December 14, 2015, the Appeals Council denied Pierce's request for

review. (*Id.* at 1.) At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pierce timely filed this action on February 12, 2016.

## II. DISCUSSION

The Social Security Act authorizes payment of disability insurance and supplemental social security benefits to persons with disabilities. Social Security Act, Disability Insurance Benefits, 42 U.S.C. §§ 401-34 (2012); Social Security Act, Supplemental Social Security Income, 42 U.S.C. §§ 1381-85 (2012). An individual shall be considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

### A. Standard of Review

In conducting its review, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Sec'y of Health and Human Servs.*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972)). Rather, the Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and that the correct legal standards were applied. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011). If the answer is "yes," then the Court may not even inquire as to whether the record could support a decision the other way. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sec'y of Health and Human Servs.*, 2 F.3d 692, 695 (6th Cir. 1993) (quoting *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)) (internal quotation marks omitted). Therefore, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows.

> 1) Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
>
> 2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
>
> 3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1 to Subpart P of Part 404 of this chapter? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.
>
> 4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

> 5) Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id*.

The claimant bears the burden of proof with respect to the first four steps. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008). The burden shifts to the Commissioner at the fifth step to prove that there are available jobs in the national economy that the claimant is capable of performing. *Id.* at 423. The claimant, however, always retains the burden of proving lack of RFC. *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Pierce's Contentions

The ALJ denied Pierce's application at step two in the five-step sequential evaluation process. In particular, the ALJ found that Pierce was not significantly limited in his ability to perform basic work activities and therefore was not disabled. Pierce claims that the ALJ erred in several ways. First, Pierce asserts that the ALJ erred by finding that he has no severe impairments and by rejecting the opinions from every treating and examining medical source in the record. Second, Pierce argues that the ALJ failed to properly evaluate his credibility. The Court will address each argument in turn.

#### 1. The ALJ's finding that Pierce's impairments have not significantly limited his ability to perform basic work-related activities and are therefore not severe

As noted, the ALJ determined that Pierce had the following impairments: chronic back pain, diabetes, hypertension, obesity, low intelligence, depression, and anxiety. However, the

ALJ determined that these impairments were not severe because they did not significantly limit his ability to perform basic work activities

To show a severe impairment, a claimant must show that he suffers from (1) a "medically determinable" physical or mental condition that can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of at least twelve months that (2) "significantly limits" his ability to do one or more basic work activities. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii),(c).

To show a "medically determinable" physical or medical condition, the claimant must present objective medical evidence (*e.g.*, signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 404.1508; Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at 1 (July 2, 1996); SSR 96-3p, 1996 WL 374181, at 2 (July 2, 1996). Symptoms alone are not sufficient to establish the existence of a medically-determinable physical or mental impairment. 20 C.F.R. § 404.1508; SSR 96-4p, 1996 WL 374187, at 1.

An impairment is considered non-severe if it minimally affects the claimant's ability to do basic work activities. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985); *see also* 20 C.F.R. § 404.1521(a). Examples of basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

Medical opinions are statements from physicians and psychologists or "other acceptable medical sources" that reflect judgments about the nature and severity of a claimant's impairments. 404 C.F.R. § 1527(a)(2); *see also* SSR 96-5p, 1996 WL 374183, at *4 ("Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis."). "Acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). In addition to acceptable medical sources, the ALJ may use evidence from "other sources" to determine the severity of a claimant's impairments. *Id*. at (d). Other sources include chiropractors. *Id*. at (d)(1).

The source of a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Treating sources must be given controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." *Id*. (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*. (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Whatever weight the ALJ accords a treating source's opinion, he or she must set forth "good reasons" for doing so. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to

'give good reasons' for not giving weight to a treating physician in the context of a disability determination.") (citing 20 C.F.R. § 404.1527(d)(2)). Opinions from examining and non-examining medical sources are assessed under these same guidelines (*i.e.*, examining relationship, specialization, consistency, and supportability), but are never assessed for controlling weight. *Id*.

The thrust of Pierce's argument is that the ALJ's committed error by giving little weight to the opinions of non-acceptable medical source, chiropractor Dr. Michael Grass; examining state-agency physician, Dr. Tricia Daniels Lee; and examining state-agency physician, Gary Dr. Maryman.

### a. Non-acceptable medical source Dr. Grass

Pierce objects to the ALJ's assessment of Dr. Grass's opinion. Dr. Grass opined, among other things, that Pierce could sit for one hour during an eight-hour work day; stand/walk for one hour in an eight-hour workday; cannot sit continuously in a work setting; would need to get up every hour for an hour; could lift five pounds frequently and fifty pounds occasionally; could carry five pounds frequently and twenty pounds occasionally; is essentially precluded from grasping, turning, and twisting objections, using his fingers and hands for fine manipulation, and using arms for reaching bilaterally; cannot perform full-time competitive work on a sustained basis, has pain or other symptoms that would constantly interfere with attention and concentration; would need to take frequent unscheduled breaks of thirty to forty-five minutes; would be absent more than three times per month; and cannot push, pull, kneel, bend, and stoop. (*Id*. at 344-48.) The ALJ concluded that the restrictions rendered by Dr. Grass were not

consistent with the conservative treatment of Pierce, the mildly impaired diagnostic evidence, inconsistent clinical evidence, and Pierce's reported activities. (Tr. 57.)

As an initial matter, the Court notes that Dr. Grass is not an acceptable medical source. Therefore, the ALJ was not *required* to adopt the opinions of Dr. Grass nor give them controlling weight. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997) ("Although Walters could offer Mr. Katz's opinions to help the Commissioner assess the extent to which his impairments affect his ability to work, the ALJ was not required to adopt the opinions of a treating chiropractor nor to give them controlling weight."). The Social Security Administration has clarified that the same factors used to evaluate medical opinions from acceptable medical sources *can* be used to evaluation opinion from other sources, such as a chiropractor. SSR 06-03P, 2006 WL 2329939, at *4. However, other medical sources are never to be given controlling weight.

The ALJ's decision to give Dr. Grass's opinions little weight was supported by substantial evidence. As the ALJ noted, Pierce's treatment has been conservative with medication and chiropractic treatments; he had not undergone any more serious treatment or surgery, nor was his medication strong given his complaints of pain. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) ("Dr. Perry's proposed limitations were inconsistent with his own treatment notes from the relevant period, which generally showed that Lester was receiving conservative treatment and that he was not suffering from disabling impairments. The proposed limitations also conflicted with Lester's daily activities and the majority of other medical evidence in the record . . . .").

9

Additionally, despite the extreme limitations imposed by Dr. Grass, a lumbar x-ray in November 2012 only showed moderate loss of disc interspace and bone spurs. (*Id*. at 358.) Moreover, after reviewing Dr. Grass's treatment records, the ALJ concluded that the clinical examination only evidenced mild impairment; indeed, Pierce was never referred for more extensive neurological or orthopedic evaluations or diagnostic testing, such as magnetic resonance imaging ("MRI"). (*Id*. at 356.) Therefore, Pierce's contention that Dr. Grass's opinions were supported by appropriate clinical and diagnostic evidence falls flat.

Moreover, during his consultative examination, Pierce stated that he would sit for four hours (in contrast to Dr. Grass's assessment) and was able to climb onto the examination table on his own. (*Id*. at 256-57.) Furthermore, Pierce's neurological examination was normal and the range of movement in his joints and spine was within normal limits, which also contrasts with Dr. Grass's treatment records. (*Id*. at 358; *see, e.g.*, 364-65 [noting restricted range of motion in lumbar spine and non-specific neurological complications].)

Finally, there is substantial evidence to support the ALJ's conclusion that Dr. Grass's restrictions are inconsistent with reported activities of daily living by Pierce. In particular, Pierce testified that he drives, completes housework, using a riding lawnmower, shops for groceries, watches television, and uses the computer. (*Id*. at 82-83.); *see also Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 427 (6th Cir. 2014) ("We have affirmed findings in similar situations, holding that daily activities such as those reported by Dyer [ability to take care of personal hygiene and grooming, cooking, cleaning, laundry, driving, and shopping] herself can constitute substantial evidence in support of a finding that a claimant is not disabled.").

Consequently, Pierce's argument that the ALJ erred in giving little weight to Dr. Grass's restrictions is unavailing.

### b. Consultative examiner physician Dr. Lee

Dr. Lee concluded that Pierce was unable to do any basic work activities such as standing and sitting for any extended period of time secondary to his pain; Dr. Lee also stated that Pierce is unable to lift, carry, and handle objects greater than five pounds. (Tr. 358.)

Plaintiff avers that Dr. Lee "performed lumbar spine x-rays that he found consistent with the limitations described for Pierce." (DN 14 at 12.) Pierce furthers avers that Dr. Lee's findings were entirely consistent with the medical record and the opinions from Dr. Grass. (*Id.*) Consequently, Pierce argues that the ALJ erred in discounting Dr. Lee's conclusions.

The ALJ gave little weight to Dr. Lee's opinions because it was consistent with Pierce's conservative treatment, mildly impaired diagnostic evidence, inconsistent clinical evidence, and his reported daily activities; the ALJ also noted that Dr. Lee's restrictions appeared to be based upon Pierce's subjective complaints as opposed to the clinical examination and presentation. (Tr. 57.) There is substantial evidence for this conclusion.

As the Court has already noted, Pierce has never been referred for more extensive neurological or orthopedic evaluations or an MRI and his treatment has been very conservative. Indeed, it does not appear that Pierce has been evaluated by any specialist for his back issues or pain. Furthermore, even Dr. Lee stated that Pierce "needs to have MRI to find if there are any other causes of his back pain" and that he has not had any recent images other than the lumber x-ray performed by Dr. Lee. (*Id*. at 358.) In other words, Dr. Lee's opinion is based on very limited evidence, evidence that showed "moderate loss of disc interspace as well as bone spurs as

well as . . . vertebrae." (*Id*.) And, again, the ALJ noted the contradiction between Pierce's descriptions of his daily activities with Dr. Lee's conclusion, based mostly on subject complaints as opposed to clinical examination, that Pierce is unable to do any basic work activities. All of these facts demonstrate that the ALJ's decision to give little weight to the conclusions of Dr. Lee was supported by substantial evidence.

### c. Consultative examiner psychologist Dr. Maryman

Dr. Maryman concluded that Pierce could understand, retain, and carry out at least a simple one to two-step instruction and task; carry out a work assignment reliably across the routine work schedule at the simple one to two-step level; would not be able to manage a work assignment that required virtually any degree of reading as part of the job; and would be able to interact inappropriately with fellow workers, supervisors, and the general public; and would be able to adapt to stressors and pressure of at least a medium to lower stress work environment. (Tr. 353-54.) Testing administered by Dr. Maryman also indicated a full-scale intelligence quotient ("IQ") of 82 and that the scores of the reading subtest, indicating a reading ability at the 2.4 grade level, were "suggestive of a discrete reading disorder." (*Id*. at 353.)

The ALJ gave little weight to Dr. Maryman's opinion because it was inconsistent with the claimant's conservative mental health treatment, mildly impaired status examinations, and reported activities.

Pierce argues that Dr. Maryman provided support for his opinions because the psychological testing indicated a full-scale IQ of 82, and that he was reading at a 2.4 grade reading level. Pierce also argues, without any analysis, that his reported activities of daily living do not prove that he is not disabled.

12

There is substantial evidence to support the ALJ's decision to give little weight to Dr. Maryman's opinions. The ALJ noted that, during Dr. Maryman's examination, Pierce had normal mood, affect, thought content, speech, and judgment and showed no signs of depression or anxiety. (*Id*. at 56, 351-52.) The ALJ, citing Pierce's testimony, noted that Pierce's depression and anxiety had virtually resolved with medication and limited outpatient counseling (*i.e.* conservative treatment). (*Id*. at 57; 78.) Moreover, the ALJ noted that Pierce had not required any inpatient psychiatric care since the alleged onset date. (*Id*. at 57, 79.); *see Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. Oct. 2, 2013) (unpublished opinion) (stating that a "conservative treatment approach suggests the absence of a disabling condition"). Notably, Pierce does not dispute these facts.

Furthermore, Dr. Maryman's own report stated that Pierce would be able to interact appropriately with others and would be able to adapt to stressors and pressure of a medium to lower stress work environment. In other words, Dr. Maryman's own assessment did not preclude any work in this regard. And, as the Court has noted, Pierce testified that he drives, completes housework, uses a riding lawn mower, and shops for groceries; Pierce has not explained how these daily activities are consistent with a disabling mental condition. Nor has Pierce pointed to any regulation or law that renders him *per se* disabled because of his IQ. With respect to Dr. Maryman's opinion regarding Pierce's reading ability, the ALJ noted that Pierce graduated from high school and had worked successfully for many years despite his report that he carried his current diagnoses during that time. (*Id*. at 57, 79.) The ALJ also observed that Pierce was laid off from work in 2011, and, although he had been looking for work, had not been

able to find anything; the ALJ stated that this was indicative of Pierce not working because he could not find any job as opposed to a disabling condition.

Consequently, the ALJ's decision to give Dr. Maryman's opinions little weight was supported by substantial evidence.

### 2. The ALJ's evaluation of Pierce's credibility

The ALJ concluded that, while Pierce's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. 56.)

While the ALJ must consider all of a claimant's statements about his symptoms, including pain, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416,929(a). The Court is limited to evaluating whether or not the ALJ's explanations for partially discrediting Pierce's allegations were reasonable and supported by substantial evidence in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[W]e are limited to evaluating whether or not the ALJ's explanations for partially discrediting Ms. Jones are reasonable and supported by substantial evidence in the record."). Moreover, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walter*s 127 F.3d at 531.

Pierce first argues that a credibility determination cannot be made solely on the basis of objective medical evidence because symptoms cannot be measured objectively. However, the ALJ did not solely rely on (the lack of) objective medical evidence. Rather, the ALJ considered the entire case record, including, as the Court has already discussed, the overall conservative treatment, mildly impaired clinical examinations by Dr. Grass and generally normal examinations by other medical sources, and Pierce's own description of his activities of daily living. (Tr. 55-56.)

Pierce also takes issue with the fact that the ALJ relied on his own observations of Pierce at the hearing. But this is exactly what the ALJ is supposed to do. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ is charged with the duty of observing a witness's demeanor and credibility."). And the ALJ did not rely solely on his own observations in partially discounting Pierce's credibility.

Finally, Pierce criticizes the ALJ's decision to essentially penalize Pierce for attempting to work with his impairments and for looking for other work. However, an ALJ "may [] consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Id*. at 532. And, the case cited by Pierce, *Felisky v. Sec'y of Health and Human Servs*., 35 F.3d 1027, 1041 (6th Cir. 1994), does not demonstrate that the ALJ committed error. While the claimant in *Felisky* had a long work history like Pierce, her disability could be traced to a specific onset date and was not the result of a gradually worsening problem. More importantly, the claimant in *Felisky* had a battery of medical records from various specialists that supported her description of her symptoms of pain. Therefore, the Court concludes that the ALJ's decision to partially credit Pierce's statements concerning the effect of

his symptoms was supported by substantial evidence. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (unpublished opinion) ("We have held that an administrative law judge's credibility findings are virtually 'unchallengeable.'") (quoting, in part, *Payne v. Comm'r of Soc. Sec.,* 402 F. App'x 109, 112–13 (6th Cir.2010)).

In sum, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Comm'r of Soc. Sec.*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Sec'y of Health and Human Servs.*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389–90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is because there is a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton*, 246 F.3d at 773 (quoting, in part, *Mullen,* 800 F.2d at 545). Therefore, the question to answer is not whether substantial evidence contradicts the ALJ's findings at issue; rather, it is whether the findings are supported by substantial evidence, and they are here. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("While [it may be true that substantial evidence contradicts the Secretary's findings], it is also true that substantial evidence supports the Secretary's finding."). Consequently, the Court finds that the final decision of the Commissioner should be affirmed.

### III.   CONCLUSION

Accordingly,

IT IS ORDERED that the Motion for Summary Judgment (DN 13) is DENIED and the final decision of the Commissioner is AFFIRMED.

The Court will enter a judgment in accordance with this opinion and order.

cc: Counsel of record